IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-146-D

CHRISTIAN VELASQUEZ, on behalf of )
himself and all others similarly situated, )
)
Plaintiff, )
)
v. ) **ORDER**
)
SALSAS AND BEER RESTAURANT, INC., )
NOE PATINO, PATRICIA PATINO, )
DIONISIO PATINO, and ISMAEL PATINO, )
)
Defendants. )

On April 7, 2015, Christian Velasquez ("Velasquez" or "plaintiff") filed a class-action complaint against Salsas and Beer Restaurant, Inc., ("SBR" or "the Restaurant"), Noe Patino, Patricia Patino, Dionisio Patino, and Ismael Patino (collectively, "defendants") claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the North Carolina Wage and Hour Act ("NCWHA), N.C. Gen. Stat. §§ 95-25.1 et seq. [D.E. 1].[1] On June 10, 2015, defendants answered [D.E. 21]. On October 24, 2016, Velasquez moved for summary judgment [D.E. 40] and filed a memorandum in support [D.E. 42], a statement of material facts ("SMF") [D.E. 41], and supporting exhibits [D.E. 43]. On December 16, 2016, defendants responded in opposition [D.E. 48], appended an affidavit from Patricia Patino ("Patino affidavit") to their response, and argued that the court lacks subject-matter jurisdiction over Velasquez's FLSA claim [D.E. 48-1]. On December 30, 2016, Velasquez replied [D.E. 50].

---

[1] Velasquez never sought class certification.

On December 30, 2016, Velasquez moved to strike the Patino affidavit [D.E. 49]. On January 20, 2017, defendants responded in opposition to Velasquez's motion to strike [D.E. 52]. On February 1, 2017, Velasquez replied [D.E. 53]. On February 1, 2017, Velasquez also moved for sanctions, claiming that the Patino affidavit contained a known falsehood [D.E. 54]. On February 22, 2017, defendants responded in opposition [D.E. 56]. On March 1, 2017, Velasquez replied [D.E. 57]. As explained below, the court denies Velasquez's motion for summary judgment, denies Velasquez's motion to strike, and denies Velasquez's motion for sanctions.

I.

Noe, Patricia, Dionisio, and Ismael Patino own and operate SBR. See SMF ¶ 3. SBR is registered as a business corporation with the North Carolina Secretary of State. Id. ¶ 4. Noe is SBR's President. Patricia is SBR's Vice President. Dionisio is SBR's Secretary. Ismael is SBR's Treasurer. Id. ¶ 3. SBR's principal office is in Fayetteville, North Carolina, and it has another office in Hope Mills, North Carolina. [D.E. 43-3]. Defendants operate three Salsas and Beer Restaurants, including a location at 231 Skyland Shopping Center, Spring Lake, North Carolina ("the Restaurant"). SMF ¶ 5.

Velasquez resides in Spring Lake, North Carolina. Id. ¶ 1. From September 2012 through November 17, 2014, defendants employed Velasquez. Id. ¶ 2. Velasquez worked as a server at the SBR at 231 Skyland Shopping Center, Spring Lake, North Carolina. Id. ¶¶ 5–6. As a server, Velasquez reported directly to the Patinos or their agents. Id. ¶ 9. Velasquez's job duties included serving food and drinks to the Restaurant's customers, but did not include management of business or employees. Id. ¶¶ 7–8. Defendants set Velasquez's work schedule. Id. ¶ 10.

During Velasquez's employment at the Restaurant, except for a two-week period in August 2014, Velasquez received no hourly wage, but instead was paid only tips. Id. ¶¶ 13–15. During a

2

two-week period in August 2014, Velasquez received checks for a total payment of $124.67. [D.E. 43-4] ¶ 10. Defendants deducted five dollars per day from Velasquez's tips and gave that money to non-tipped employees, including a "chip girl," drink-carriers, and busboys. SMF ¶¶ 17–19; [D.E. 43-2] 26–27; [D.E. 43-4] ¶ 9. Velasquez worked 55 hours per week on average, but was never paid additional wages for overtime hours worked. SMF ¶ 20. Defendants did not keep or maintain records showing how many hours Velasquez worked. Id. ¶ 12.

On April 7, 2015, Velasquez filed this action. See Compl. [D.E. 1]. Defendants answered and denied that defendants

> were an enterprise engaged in commerce or the production of goods as defined by Section 3(s) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

See Answer [D.E. 21] ¶ 26. Defendants raised as a defense to the FLSA claim a lack of subject-matter jurisdiction. See id.; see also id. at 1.

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of a genuine dispute of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury

3

to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient...." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88.

Velasquez's NCWHA claim requires this court to apply North Carolina law. In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the Supreme Court of North Carolina "has spoken neither directly nor indirectly on the particular issue before," this court must "predict how [it] would rule if presented with the issue." Id. (quotations omitted). In making that prediction, the court "may consider lower court opinions[,] ... treatises, and the practices of other states." Id. (quotation omitted).[2] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

---

[2] North Carolina does not have a mechanism for certifying questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

A.

As for Velasquez's FLSA claim, defendants argue that the court lacks subject-matter jurisdiction over that claim. Subject-matter jurisdiction is "the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). The court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A party's failure to establish subject-matter jurisdiction may be raised at any time by any party or by the court. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506–07 (2006); GO Comput., Inc. v. Microsoft Corp., 508 F.3d 170, 175 n.2 (4th Cir. 2007); Fed. R. Civ. P. 12(h)(3). When a district court may dismiss a claim under Rule 56 or Rule 12(b)(1) for lack of subject-matter jurisdiction, the Fourth Circuit has observed that, rather than granting summary judgment under Rule 56, the district court should dismiss the suit for want of jurisdiction under Rule 12(b)(1). See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995); see also White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005); Evans, 166 F.3d at 647 & n.3; Saval v. BL Ltd., 710 F.2d 1027, 1029 n.2 (4th Cir. 1983) (per curiam). Proceeding under the Rule 12(b)(1) framework is appropriate even if neither party has brought a motion under that provision. See Williams, 50 F.3d at 301–02, 304.

There are two ways the court may conclude that it lacks subject-matter jurisdiction under Rule 12(b)(1). See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). "The court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the

5

plaintiff, similar to an evaluation pursuant to Rule 12(b)(6). Alternatively, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." Id. (citations omitted). Thus, a motion under Rule 12(b)(1) permits "[a] trial court [to] consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see Suter v. United States, 441 F.3d 306, 309 n.2 (4th Cir. 2006). When the court weighs the evidence concerning subject-matter jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

The FLSA provides that an "employer shall pay to each of his employees" $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Furthermore, "no employer shall employ any of his employees . . . for a workweek longer than forty hours" without paying such a non-exempt employee overtime compensation at least 1.5 times the employee's normal rate. Id. § 207(a)(1). Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 . . . shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Id. § 216(b).

The United States Court of Appeals for the Fourth Circuit has held that FLSA coverage is a jurisdictional requirement of an FLSA claim. See Ergashov v. Glob. Dynamic Transp., LLC, 680 F. App'x 161, 162–63 (4th Cir. 2017) (per curiam) (unpublished).[3] Sections 206 and 207 apply only

---

[3] Other courts, including some district courts in the Fourth Circuit before Ergashov, have held that FLSA coverage is not a jurisdictional requirement. See Chao v. Hotel Oasis, Inc., 493 F.3d 26,

6

if the plaintiff's employment was covered under the FLSA. "There are two possible types of FLSA coverage." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011). "First, an employee may claim individual coverage if he regularly and directly participates in the actual movement of persons or things in interstate commerce." Id. (alteration and quotation omitted). "Second, an employee is subject to enterprise coverage if he is 'employed in an enterprise engaged in commerce or in the production of goods for commerce' . . . ." Id. at 1298–99 (quoting 29 U.S.C. § 207(a)(1)). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "Goods" means "goods . . . , wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." Id. § 203(i). In relevant part, an "[e]nterprise [is] engaged in commerce or in the production of goods for commerce" if it:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated); . . . .

Id. § 203(s)(1)(A). An employee may be subject to individual coverage, enterprise coverage, or both

---

33 (1st Cir. 2007); Fernandez v. Centerplate/NBSE, 441 F.3d 1006, 1009 (D.C. Cir. 2006); Maravilla v. Ngoc Anh Rest., Inc., 1:16-CV-427(LMB/MSN), 2016 WL 6821090, at *3 (E.D. Va. Nov. 17, 2016) (unpublished); Gilbert v. Freshbikes, LLC, 32 F. Supp. 3d 594, 600–01 (D. Md. July 9, 2014) (unpublished); Rodriguez v. Diego's Rest., Inc., 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009). This court's analysis of the FLSA coverage issue, however, would be the same whether FLSA coverage is a jurisdictional requirement or merely an element of an FLSA claim. The only difference would be whether the court dismissed Velasquez's FLSA claim for lack of subject-matter jurisdiction or for failure to prove an element of his claim. See Arbaugh, 546 U.S. at 510–16.

7

Case 5:15-cv-00146-D   Document 59   Filed 09/28/17   Page 7 of 13

individual and enterprise coverage. See Josendis, 662 F.3d at 1299.

An employee may establish individual coverage by proving that he was directly and regularly engaged in commerce or in the production of goods for commerce. See id. at 1315. "[W]hether an employee is engaged 'in commerce' within the meaning of [the FLSA] is determined by practical considerations, not by technical conceptions. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated activity." Mitchell v. C.W. Vollmer & Co., 349 U.S. 427, 429 (1955) (citations omitted); see Ergashov, 680 F. App'x at 162–63; Josendis, 662 F.3d at 1316. The scope of activities that are "in commerce" under the FLSA is narrower than the scope of activities the federal government may regulate under the Commerce Clause. See Mitchell v. H.B. Zachry Co., 362 U.S. 310, 313 (1960); Josendis, 662 F.3d at 1316. The FLSA does not permit courts to "absorb by adjudication essentially local activities." 10 E. 40th St. Bldg. v. Callus, 325 U.S. 578, 582–83 (1945). "[E]mployees who handle goods after acquisition by a merchant for general local disposition are not" engaged in commerce under the FLSA. McLeod v. Threlkeld, 319 U.S. 491, 494 (1943); see Josendis, 662 F.3d at 1316. Employees at restaurants who cook or serve food for customers within a single state are not engaged in commerce or the production of goods for commerce under the FLSA. See, e.g., Martinez v. Palace, 414 F. App'x 243, 245–47 (11th Cir. 2011) (per curiam) (unpublished); Yan v. Gen. Pot, Inc., 78 F. Supp. 3d 997, 1003 (N.D. Cal. 2015); Lopez v. Top Chef Inv., Inc., No. 07-21598-CIV, 2007 WL 4247646, at *2 (S.D. Fla. Nov. 30, 2007) (unpublished); Si v. CSM Inv. Corp., No. C-06-7611 PVT, 2007 WL 1518350, at *3 (N.D. Cal. May 22, 2007) (unpublished); Russell v. Cont'l Rest., Inc., 430 F. Supp. 2d 521, 525–27 (D. Md. 2006); Xelo v. Mavros, No. 03-CV-3665 (NG)(MDG), 2005 WL 2385724, at *4–5 (E.D.N.Y. Sept. 28, 2005) (unpublished); Lamont v. Frank Soup Bowl, Inc., No. 99 Civ. 12482(JSM), 2001 WL 521815, at *2

8

(S.D.N.Y. May 16, 2001) (unpublished); see also Josendis, 662 F.3d at 1315–17; Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266–68 (11th Cir. 2006).

Velasquez does not offer evidence in the record that, while working at the Restaurant, he was directly and regularly "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Thus, individual coverage does not apply. See Martinez, 414 F. App'x at 245–47; Yan, 78 F. Supp. 3d at 1003; Lopez, 2007 WL 4247646, at *2; Si, 2007 WL 1518350, at *3; Russell, 430 F. Supp. 2d at 525–27; Lamont, 2001 WL 521815, at *2; see also Josendis, 662 F.3d at 1315–17; Thorne, 448 F.3d at 1266–68.

As for enterprise coverage, a plaintiff must prove that his employer: "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A); see Josendis, 662 F.3d at 1317. Velasquez's statement of material facts does not cite any competent evidence supporting either prong of enterprise coverage. Furthermore, Velasquez's memorandum in support of his motion for summary judgment does not mention either prong of enterprise coverage. Rather, in replying to defendants' argument that he failed to establish FLSA coverage, Velasquez's reply briefly references an alleged May 2014 North Carolina Department of Labor report concerning "Salsa & Beer, Inc. DBA Salsa and Beer" ("SBI") and alleged 2012 and 2016 North Carolina Alcoholic Beverage Commission ("NCABC") reports concerning SBI's business, which allegedly show that SBI had sales of over $500,000.00 in some years. See [D.E. 49-3] 2–7; [D.E. 51-2].

Velasquez has failed to prove enterprise coverage. See Josendis, 662 F.3d at 1317 (a plaintiff cannot rely on "conjecture and speculation" to establish enterprise coverage). First, Velasquez has

9

not presented any competent evidence demonstrating that defendants' employees engaged in commerce, the production of goods for commerce, or handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce. Although one might assume that all restaurants employ at least one such employee, the Fourth Circuit has made clear that a court may not make such an assumption. See Ergashov, 680 F. App'x at 163 (delivering donuts to Dunkin Donuts stores that are "part of a national franchise is not enough to show that the Appellants were engaged in interstate commerce as opposed to merely affecting it"); accord Josendis, 662 F.3d at 1317–19 (requiring evidence, not conjecture and speculation, to prove enterprise coverage). Rather, the Fourth Circuit requires a party to present evidence to prove each element of coverage under the FLSA. Given the array of discovery tools available to parties engaged in civil litigation in federal court, the Fourth Circuit's requirement is not too much to ask.

Because Velasquez has failed to prove the first element of the enterprise coverage, the court need not address the second element. Alternatively, however, the record does not include competent evidence that, during the relevant time period, defendants' annual gross volume of sales or business done was $500,000.00 or more. See Josendis, 662 F.3d at 1317–19. Again, the court notes that every party engaged in civil litigation in federal court has an array of discovery tools available. When defendants deny in their answer that enterprise coverage exists (as defendants did in this case), a party who asserts enterprise coverage should use the discovery tools in the Federal Rules of Civil Procedure to obtain competent evidence to prove the second element of enterprise coverage: an enterprise whose annual gross volume of sales made or business done is $500,000 or more. On this record, Velasquez has failed to prove the second element of enterprise coverage. Thus, the court lacks subject-matter jurisdiction over his FLSA claim, and that claim is dismissed. See Ergashov, 680 F. App'x at 162–63; see also Williams, 50 F.3d at 304.

10

B.

As for Velasquez's NCWHA claim, all parties are North Carolina citizens. Thus, the court lacks diversity jurisdiction. See 28 U.S.C. § 1332(a); Clark v. Velsicol Chem. Corp., 944 F.2d 196, 197 (4th Cir. 1991). Nonetheless, the court may exercise supplemental jurisdiction over Velasquez's NCWHA claim. See 28 U.S.C. § 1367(a). However, the court has dismissed Velasquez's only federal claim and declines to exercise supplemental jurisdiction over Velasquez's NCWHA claim. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001). In doing so, the court notes that Velasquez's NCWHA claim involves novel issues of North Carolina law. These novel issues provide an alternative rationale for declining to exercise supplemental jurisdiction over Velasquez's NCWHA claim. See 28 U.S.C. § 1367(c)(1). Accordingly, the court dismisses without prejudice Velasquez's NCWHA claim, and he may pursue his NCWHA claim in state court.

III.

As for Velasquez's motion to strike, Velasquez moves to strike Patino's affidavit in which she swears that SBR "did have and does have an annual gross volume of sales made or business done of less than $500,000" when SBR employed Velasquez. See [D.E. 48-1] ¶ 4. Velasquez moves to strike the affidavit under Rule 56 because Patino allegedly relies upon information not in the record and because Patino allegedly based her statement on facts outside Patino's personal knowledge.

Velasquez seeks relief under Rule 56(e). Rule 56(e), however, describes what a court may do if a party fails to properly support or address a fact when arguing for or against summary

11

judgment and does not regulate the form or content of affidavits.[4] Thus, Rule 56(e) does not help Velasquez. Moreover, to the extent Velasquez argues that the court should strike Patino's affidavit because it does not cite to the record, that argument fails. Rule 56(c)(1)(A) requires a party to cite to the record when supporting a proposition in briefing, not affidavits.

Velasquez also argues that the court should strike the affidavit because Patino's testimony in the affidavit lacks a proper foundation. An affidavit submitted in opposition to a summary-judgment motion must contain admissible evidence, and the affiant must have personal knowledge of the information contained in the affidavit. See Evans, 80 F.3d at 962; Fed. R. Civ. P. 56(c)(4). Velasquez argues that Patino's affidavit fails this test. In support, Velasquez argues that Patino stated that she was "familiar with the books and records of" SBR, but failed to attach those records to her affidavit.

The fact at issue is SBR's gross volume of sales or business done during the relevant period. Patino's affidavit constitutes admissible evidence concerning SBR's gross volume of sales or business done during the relevant period. She asserts personal knowledge, and it is reasonable to infer that a corporation's vice president would know, based on personal knowledge, whether the corporation's annual gross volume of sales or business done for a given period exceeded certain round-number thresholds like $500,000.00. Cf. Evans, 80 F.3d at 962 n.6. In order for the court to consider the affidavit, Patino did not have to attach SBR's business records to the affidavit. Thus, the court rejects this argument.

Velasquez also argues that the court should strike Patino's affidavit because it contains false information. In support, Velasquez cites the 2012 and 2016 NCABC reports and the 2014 NCDOL

---

[4] Before an amendment to Rule 56 in 2010, subsection (e) contained rules regarding the form of affidavits. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

12

letter concerning SBI. Patino's affidavit referred to SBR's annual gross volume of sales or business done. For purposes of the motion to strike, evidence of SBI's gross volume of sales or business done is not necessarily evidence of SBR's gross volume of sales or business done. Simply put, on this record, the court declines to find that Patino's affidavit contains false information. Thus, the court denies the motion to strike.

As for Velasquez's motion for sanctions, he seeks sanctions under Rule 11, Rule 56(h), and 28 U.S.C. § 1927 in response to defendants filing of Patino's affidavit. See [D.E. 54-1]. Velasquez contends that the Patino affidavit contained knowingly false information—that SBR's annual gross volume of sales or business done during the relevant period was less than $500,000.00—and again cites the alleged NCABC and NCDOL documents. This argument, however, fares no better than the argument in support of the motion to strike. Thus, the court denies the motion for sanctions.

IV.

In sum, the court DENIES plaintiff's motion for summary judgment [D.E. 40], DENIES plaintiff's motion to strike [D.E. 49], and DENIES plaintiff's motion for sanctions [D.E. 54]. Plaintiff's FLSA claim is DISMISSED for lack of subject-matter jurisdiction. The court DECLINES to exercise supplemental jurisdiction over plaintiff's NCWHA claim and DISMISSES without prejudice the NCWHA claim. Plaintiff may seek relief under the NCWHA in state court. The clerk shall close the case.

SO ORDERED. This **28** day of September 2017.

*[signature]*
JAMES C. DEVER III
Chief United States District Judge

13